JTB LAW GROUP LLC
155 2nd Street, Suite 4
Jersey City, New Jersey 07302
(201) 630-0000
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

Civil Action No.: 2:13-cv-06945 (KSH)(CLW)

**DADUL MAHARAJ,**

Plaintiff,

-against-

**TIME WARNER CABLE, INC and
CONNIE CILIBERTI,**

Defendants.

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTION
## TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………  3

PRELIMINARY STATEMENT …………………………………………  6

STANDARD OF REVIEW
AND THE COMPLAINT …………………………………………………  8

ARGUMENT ……………………………………………………………… 11

   I.     THE FAC STATES CLAIMS FOR RACE,
   NATIONAL ORIGIN, AND RELIGIOUS DISCRIMINATION ………… 11

   A.  The FAC States A Claim For Denial Of
      A Religious Accommodation ……………………………………… 11

   B.  The FAC's Other Race, National Origin, And Religious Discrimination
      Claims Are Properly Pled …………………………………………….. 15

   II.    THE FAC STATES A CLAIM FOR RETALIATION ……………… 18

   III.   PLAINTIFF HAS NOT WAIVED OTHER CLAIMS
      BY PLEADING A CEPA CLAIM.   …………………………………… 21

   IV.   IN THE ALTERNATIVE, PLAINTIFF SHOULD
      BE GRANTED LEAVE TO AMEND THE COMPLAINT. …………. 24

# TABLE OF AUTHORITIES

**CASES**                                                                       **Pages**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ……………………………………………….. 9, 16, 20

*Baklayan v. Ortiz,*
No. 11-cv-03943,
2012 U.S. Dist. LEXIS 48705
(D.N.J., April 5, 2012)…………………………………………………16, 17

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ……………………………………………….8, 9, 16

*Broad v. Home Depot, Inc.,*
2014 U.S. Dist. LEXIS 55552 (D.N.J., April 22, 2014)………………………22

*Conley v. Gibson,*
355 U.S. 41 (1957)………………………………………………….. 8

*Curtis v. Everette,*
489 F.2d 516 (3d Cir. 1973) …………………………………………..9

*Doe v. Sizewise Rentals, LLC,*
No. 09-cv-3409, 2010 U.S. Dist. LEXIS  124623
(D.N.J. Nov. 22, 2010) …………………………………………….16, 17

*EEOC v. Geo Group, Inc.,*
616 F.3d 265 (3d Cir. 2010) …………………………………….. 13, 14

*Fraser v. Nationwide Mut. Ins. Co.,*
352 F.2d 107 (3rd Cir. 2003)………………………………………………24

*Great Western Mining & Min. Co. v. Rothschild LLP,*
615 F.3d 159 (3d Cir. 2010) …………………………………………10

*Hedges v. United States,*
404 F.3d 744 (3d Cir. 2005) ………………………………………….9

*Holmes v. Gates,*
No. 08-cv-2152, 2010 U.S. Dist. LEXIS 22884
(M.D. Pa. Mar. 11, 2010),
*aff'd,* 403 Fed. Appx. 670 (3rd Cir. 2010) ……………………………………19

**CASES**                                                                 **Pages**

*Hornung v. Weyerhaeuser Co.,*
No. 06-cv-2300,
2007 U.S. Dist. LEXIS 70080 (D.N.J. Sept. 21, 2007) ………………………23

*In re Ins. Brokerage Antitrust Litig.,*
618 F.3d 300 (3d Cir. 2010) …………………………………………………..9

*Kost v. Kozakiewicz,*
1 F.3d 176 (3d Cir. 1993) …………………………………………..………9

*Maw v. Advanced Clinical Communications,*
359 N.J. Super. 420 (App. Div. 2003) ………………………………………..21, 23

*Maw v. Advanced Clinical Communications,*
179 N.J. 439, 445-46 (2004) …………………………………………………22, 23

*Moran v. Redford Union Sch. Dist.,*
No. 08-cv-15215,
2009 U.S. Dist. LEXIS 120779
(E.D. Mich. Dec. 29, 2009) …………………………………………..………20

*Robles v. U.S. Envtl. Universal Servs., Inc.,*
469 Fed.Appx. 104 (3rd Cir. 2012) …………………………………………22, 23

*Rubin v. Sultan Healthcare,*
2009 U.S. Dist. LEXIS 41534 (D.N.J. 2009) …………………………………22, 23

*Sangi v. Warren Hospital,*
No. 10-cv-4571, 2011 U.S. Dist. LEXIS 117463
(D.N.J., Oct. 11, 2011) …………………………………………………………..16, 17

*Santiago v. Warminster Township,*
629 F.3d 121 (3d Cir. 2010) …………………………………………………9

*Tavarez v. Twp. of Egg Harbor,*
No. 09-cv-6119,
2010 U.S. Dist. LEXIS 59984 (D.N.J., June 16, 2010)…………………………..16, 17

*Weber v. City of New York,*
973 F. Supp. 2d 227 (E.D.N.Y. 2013) …………………………………………13, 14

*Young v. Schering Corp.,*
141 N.J. 16 (1995) …………………………………………………………21, 23

**STATUTES**
**AND RULES**                                                      **Pages**

42 U.S.C. 1981 ……………………………………………………………6, 7

42 U.S.C. § 2000e……………………………………………………………6, 12

New Jersey Law Against Discrimination,
N.J.S.A. 10:5-1 *et seq* …………………………………………………………6, 13, 14

15 N.Y. Exec. Law § 290 *et seq.* …………………………………………………19

New York City Administrative Code § 8-107 (7) ………………………….6

New Jersey Conscientious Employee Protection Act ("CEPA"),
N.J.S.A. 34:19-1 *et seq.* ………………………………………………………6, 7, 21-23

Fed. R. Civ. P. 8 (a) ……………………………………………………………8

Fed. R. Civ. P.  12 (b)(6) …………………………………………………… 8

## PRELIMINARY STATEMENT

Plaintiff Dadul Maharaj ("Plaintiff") hereby submits this Memorandum of Law in opposition to the Motion (the "Motion") of Defendants Time Warner Cable, Inc. ("TWC") and Connie Ciliberti (together hereinafter, "Defendants") to Dismiss the First Amended Complaint. In their Motion, Defendants seek to dismiss the First Amended Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

Plaintiff, a former cable installer for Defendants, here alleges discrimination on the basis of race, national origin, and religious discrimination in violation of 42 U.S.C. 1981 and 42 U.S.C. § 2000e ("Title VII"), the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.,* the New York Human Rights Law ("NYHRL"), 15 N.Y. Exec. Law § 290 *et seq.* the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-107 (7), and the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq.*

The Motion urges this Court to conclude, *inter alia,* that Plaintiff's discrimination claims are "wholly conclusory" and that his claims of discrimination should be dismissed because he did not sufficiently plead that the adverse employment actions he experienced were motivated by a discriminatory animus. *Memorandum of Law In Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint* ("Def. Mem."), p. 1.   As a careful review of the FAC makes clear, and as argued more fully below, these arguments are simply incorrect.

In the course of urging this Court to dismiss the FAC in its entirety, Defendants make three meritorious arguments, none of which would lead to the dismissal in its entirety of any Count of the FAC against both Defendants.  Instead, if this Court were to grant these isolated meritorious aspects of the Motion, the only effect would be that the factual and legal issues under

two Counts would be properly narrowed.  First, Defendants argue, correctly, that the First Count of the FAC improperly pleads religion as a protected ground under 42 U.S.C. § 1981.   (Def. Mem., p. 29).  Plaintiff by counsel would consent to limiting the First Count of the FAC to the racial and national origin and retaliation claims under 42 U.S.C. § 1981, also pleaded in the First Count.  Second, Defendant Ciliberti argues correctly that there is no individual liability under Title VII, and so the First and Second Counts should be dismissed as to her.  (Def. Mem., p. 29)  Plaintiff by counsel would agree to dismissal of these Counts against Defendant Ciliberti, and would contend that these Counts are otherwise validly pleaded as against Defendant TWC.  Third, Defendants argue that claims under 42 U.S.C. § 1983, which are part of the First Count of the FAC, should be dismissed as to both Defendants because such Defendants are not state actors.  (Def. Mem., p. 30). On review of authorities cited in Defendants' Motion, Plaintiff by counsel has concluded that this argument is correct, and Plaintiff consents to dismissal of that part of the FAC's First Count.

Other than these three arguments, the Motion is without merit and should be denied.  The FAC sufficiently pleads the factual predicate of federal and state claims of discrimination, and adequately pleads discriminatory animus and a causal connection between his protected activities and the adverse employment actions so as to satisfy the pleading standards of notice pleading under Rule 8 of the Federal Rules of Civil Procedure.  Contrary to Defendants' arguments (Def. Mem., pp. 2-3), the FAC adequately pleads the state law claims, and under well-settled case law, the mere inclusion of a CEPA claim in a complaint does not compel the dismissal either of the CEPA claim or any other claim in the complaint.  Similarly (id. at p.3), the mere inclusion of religion as a category in a Section 1981 claim that also includes race and national origin claims does not support dismissal of the entire claim.   Accordingly, Plaintiff submits that Defendants'

contention that Plaintiff's FAC "should be dismissed in its entirety" (Def. Mem., p. 3) is unsupported and should be rejected.

Alternatively if, as Plaintiff submits is unlikely, this Court grants the Motion in its entirety and wholly dismisses the FAC, under Rule 15 (a) of the Federal Rules of Civil Procedure, Plaintiff should be granted leave to amend the FAC to correct any deficiencies, as justice would require this Court to grant such leave.

Contrary to the Defendants' arguments, the FAC readily satisfies well-established standards for pleading in discrimination cases.  The FAC is a definite enough pleading to pass muster at this early stage of the litigation.  It is an adequately plain, simple, and straightforward request for relief that makes clear the factual basis for Plaintiffs' claims and amply satisfies Fed. R. Civ. P. 8 (a)'s standards for and purpose of notice pleading.  Defendants' position should be rejected, and except for the isolated meritorious arguments discussed above, their Motion should be denied.

**STANDARD OF REVIEW
AND THE COMPLAINT**

Rule 12 (b)(6) of the Federal Rules of Civil Procedure allows motions to dismiss for failure to state a claim upon which relief can be granted.  Complaints must satisfy the notice pleading standard of Rule 8 of the Federal Rules of Civil Procedure, which requires "only `a short and plain statement of the claim showing that the pleader is entitled to relief in order to `give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), citing Fed.R.Civ. P. 8(a)(2) and quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005). Thus, when considering a motion to dismiss, a court will accept as true all allegations in the complaint, and will draw all reasonable inferences in favor of the plaintiff. *Curtis v. Everette,* 489 F.2d 516, 518 (3d Cir. 1973).

A complaint "does not need detailed factual allegations," *Twombly,* 550 U.S. at 555. However, it must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Twombly,* 550 U.S. at 570. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id.* at 678. When reviewing a motion to dismiss, this Court construes the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, this Court must take the following three steps:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir.

2010); *see also Great Western Mining & Min. Co. v. Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010).

The instant Complaint readily satisfies these standards.  Leaving aside legal conclusions and assertions, the Complaint is replete with specific factual detail, and makes, *inter alia,* the following specific factual allegations:

The FAC specifically alleges that the Plaintiff was a witness in a federal lawsuit alleging discrimination against minority individuals, *Castillo v. Time Warner Cable,* 1:09-cv-07644-PAC (the "Castillo Case") in which a verdict was rendered against TWC for discrimination, that he submitted a declaration in which he stated that he was a victim of TWC's discrimination and experienced and witnessed discrimination at TWC, and that the adverse employment action against Plaintiff was in retaliation for testifying truthfully against TWC and exposing its pattern and culture of enduring racism and discrimination.  (FAC, ¶¶ 16-21).

The FAC alleges that after Plaintiff's participation in the Castillo Case, the discrimination against him intensified, that he was passed over for promotion to shift supervisor, that he was subjected to comments and jokes about individuals from India, that the complaints have continued despite repeated complaints to management.  (FAC,¶¶ 26-30).  The FAC alleges that Defendant Connie Ciliberti perpetuated the discriminatory culture at TWC by purposefully singling out the Plaintiff for suspension and corrective action, wrongfully writing him up and suspending him without legitimate and non-pretextual business reasons, and harassing him; and did so in retaliation for Plaintiff's complaints at TWC and for his testimony in the Castillo Case, and because of his race and national origin.  (FAC  ¶¶ 32-34).  With even greater specificity, the FAC alleges that Defendants TWC and Ciliberti made Plaintiff the only Business Class

technician in Bergen County, New Jersey, as retaliation for his testimony in the Castillo Case and standing up against the unlawful discrimination at TWC (FAC ¶¶ 35-37).

The FAC also specifically alleges, as part of Plaintiff's factual showing of discriminatory acts, that he requested religious accommodations at TWC, including being given a day off for spiritual practice and fasting because of his Hindu religion, and was denied such accommodations for no legitimate business reason.  FAC ¶ 39.

In view of the meticulous detail with which the FAC pleads the predicate facts, Defendants' claim that the FAC is somehow inadequate is a simply wrong.  The Motion, except to the extent Plaintiff explains herein, should be denied.

## ARGUMENT

## I. THE FAC STATES CLAIMS FOR RACE, NATIONAL ORIGIN, AND RELIGIOUS DISCRIMINATION.

### A.     The FAC States A Claim For Denial Of A Religious Accommodation.

The Defendants argue (Def. Mem., pp. 9-11) that Plaintiff failed to properly plead a claim for denial of a religious accommodation, and that the FAC should therefore be dismissed. Defendants cite no case law, because there is none, to support this proposition.  Neither of the cases that Defendants cite support this proposition. As a comparison of the FAC with applicable case law demonstrates, the Plaintiff has properly pleaded a cause of action for discrimination on the basis of religion under the applicable statutes, including the improper denial of a religious accommodation.  Thus, the Motion in this respect should be denied.

The FAC alleges in relevant part:

¶ 39.  Plaintiff has requested religious accommodations from [TWC], which have been denied.  Some of these requests, including that he be given off one day during the week for spiritual practice and fasting in accordance with his sincerely held Hindu beliefs, have been denied specifically because they are part of his Hindu practice . . . and not because of any business need.. .

¶ 60.  Defendants intentionally discriminated against Plaintiff with respect to terms and conditions, and privileges of his employment because of his . . . religion . . . in violation of 42 U.S.C. § 2000e-2 (a)(1).

¶ 61.  These terms, conditions, and privileges of employment include, but are not limited to, not promoting Plaintiff to the Shift Supervisor position; failure to grant Plaintiff the same training and advancement opportunities as other employees; hindering, diminishing, and adversely affecting his ability to advance in his career; excessive and unfounded criticism, write-ups, meetings, and harassment no otherwise leveled and directed at white employees.   These discriminatory employment practices were motivated by . . . religion . .  in contravention of 42 U.S.C. § 2000e-2 (m).

¶ 75.  Defendants have refused to grant Plaintiff religious accommodations he has requested, and have demanded that he violate and forego sincerely held religious practices and observances as a condition of retaining employment, advancing and receiving promotions, in violation of N.J.S.A. 10:5-12(11)(q)(1).

¶ 76.  Defendants have not made a bona fide effort to accommodate Plaintiff's religious beliefs, and have failed to demonstrate  that they are unable to reasonably accommodate him without undue hardship on the conduct of [TWC]'s business.

¶ 77. As a result of the Defendant's actions, the Plaintiff has suffered diminution of employment opportunity and ultimately loss of employment.

Defendants grossly mischaracterize this detailed pleading by arguing that the FAC "merely pleads that [the Plaintiff] held certain religious beliefs, and requested certain accommodations to his working conditions" and that Plaintiff "has not . . .  identified any conflict that existed between his religious beliefs and a requirement of his job, or pled that he was disciplined for failing to comply with the conflicting requirement."  Def. Mem., p. 10.   This is simply not true.

As is clear when the above provisions of the FAC are read together, Plaintiff alleges that Defendants engaged in a pervasive pattern of discrimination on the basis of religion in

violation of Title VII and the NJLAD (FAC ¶¶ 60, 61), which included denying him religious accommodations without a legitimate business reason (¶¶ 39, 75, 76) and taking a variety of specific adverse employment actions against the Plaintiff, based on his religion, all in violation of applicable statutes (FAC ¶¶ 61, 77).

Only by arbitrarily and selectively parsing out a few paragraphs from the FAC, and ignoring the factual allegations of the FAC as a whole, could the Defendants reach the conclusion that Plaintiff has not "identified any conflict that existed between his religious beliefs and a requirement of his job," or "pled that he was disciplined for failing to comply with the conflicting requirement." Similarly, only by reading paragraph of the FAC in isolation (Def. Mem. p. 10), and not reading the rest of the FAC, could Defendants argue that the allegations of that paragraph "merely recites the elements of a religious accommodation claim as set forth in the NJLAD, and should be given no consideration by the Court."  This conclusion is wrong.  As the above sections of the FAC make clear, Plaintiff alleges that he was subject to specific adverse employment actions, including the Defendants' failure to honor his request for accommodation of his specific religious practices and other specific adverse actions including termination of his employment, on the basis of his religion in violation of Title VII and the NJLAD.

Plaintiff submits that he has, therefore, adequately pled (1) that he holds a sincere religious belief that conflicts with a job requirement; (2) that he informed his employer of the conflict; and (3) that he was disciplined for failing to comply with the conflicting requirement. Def. Mem., p. 9, citing *EEOC v. Geo Group, Inc.,* 616 F.3d 265, 271 (3d Cir. 2010) and *Weber v. City of New York,* 973 F. Supp. 2d 227 (E.D.N.Y. 2013).  He has properly pled, in accordance with the NJLAD,  that Defendants imposed upon him "as a condition of . . . retaining

13

employment . . . terms or conditions that would require" him "to violate or forego a sincerely held religious practice or religious observance . . . in accordance with the requirements of his religion or religious belief."  Def. Mem., p. 9, quoting the NJLAD, N.J.S.A. § 10:5-12(q)(1).  He specifically pled the religious accommodations he requested, specifically pled that he requested this accommodation from his employers, specifically pled that such accommodations were denied, and specifically pled that he was subject to specific adverse employment action causally linked to his religion including the termination of his employment, based on his religion.  Accordingly, Plaintiff has properly stated a claim for denial of a religious accommodation, and the Motion in this regard should be denied.

Neither *Geo Group* nor *Weber*, cited by Defendants at pp. 9-10 of their Memorandum of Law, stands for the proposition that a complaint must be dismissed because it does not recite the elements of a religious accommodation as set forth in those cases.  Both cited cases were religious discrimination cases in which summary judgment was granted.  *Geo Group, supra,* was a case which raised the question of whether a private correctional company validly asserted an "undue hardship" defense to the employee's request to wear a khimar, an article of clothing that the employee asserted was part of her Muslim faith.  The appellate court there held that the employer's showing of security concerns satisfied the necessary showing for the undue hardship defense.  *Geo Group,* 616 F.3d at 277.  In *Weber,* summary judgment was granted because the court held that the Plaintiff had not sustained his burden to show a *prima facie* case of failure to provide a religious accommodation.  *Weber,* 973 F.Supp. 2d at 258-60.  Neither case mandates that a complaint must be dismissed at the pleading stage because of a hyper-technical reading of the notice pleading requirements as urged by Defendants.   Plaintiff has adequately pled that he was not provided with a religious accommodation.  The Motion in this respect should be denied.

B.  The FAC's Other Race, National Origin, And Religious Discrimination Claims Are Properly Pled.

Defendants argue that Plaintiff's claims for race, national origin and religious origin and religious discrimination must be dismissed because they are "wholly conclusory" (Def. Mem., p. 11, pp. 11-14).   Simply put, these claims are in no way conclusory, and this part of the Defendants' Motion must be rejected.  The FAC is replete with factual details regarding Plaintiff's membership in protected categories, the adverse employment actions taken against him, the fact that there was no legitimate business need for the adverse employment action, and the fact that employees outside the protected classes were not similarly treated.  Plaintiff's claims are properly pleaded and this aspect of the Defendants' Motion must be denied.

The FAC alleges, in relevant part:

¶ 29.  Plaintiff has been subjected to comments and jokes about individuals from India, including, but not limited to, from Bill Lissemore, RVP of Technical Operations for [TWC].

¶ 30.  These comments and jokes have continued despite repeated complaints to management.

¶ 32.  Defendant Conie Ciliberti, VP of Human Resources has perpetuated the discriminatory culture at [TWC], by purposefully singling out Plaintiff for suspension and corrective action, wrongfully writing him up, and suspending him without legitimate and non-pretextual business reasons, and harassing him.

¶ 33.  Defendant Connie Ciliberti has acted out of retaliation, in an effort to fire Plaintiff for his complaints at [TWC] [.]

¶ 52.  Defendants subjected Plaintiff to differential terms and conditions of employment because of his race, national origin, religion, and participation in a Federal lawsuit.

¶ 53.   These differential terms and conditions of employment include, but are not limited to: not promoting Plaintiff to the Shift Supervisor position; failure to grant Plaintiff the same training and advancement opportunities as other employees; hindering, diminishing, and adversely affecting his ability to advance in his career; excessive and unfounded criticism, write-ups, meetings, and harassment not otherwise leveled and directed at white

employees and those not being retaliated against; and retaliation in the terms and conditions of his employment, and advancement opportunities, and day-to-day operational experience in retaliation for his complaints of unlawful discrimination and as a result of his testimony attesting to discrimination in the workplace during the *Castillo* case.

¶ 54.  All of the foregoing actions were taken by the Defendants in order to deprive Plaintiff of employment and opportunities on account of his race and religion, and to retaliate against him for testifying against [TWC] in federal court.

Defendants contend that this pleading is inadequate because the Plaintiff "does not plead any facts linking his race, national origin, and religion to these . . .  employment actions, or provide any details regarding these . . . actions that could create an inference of discrimination (i.e., he does not identify any similarly situated employees not in his protected class who received more favorable treatment)."  Def. Mem., pp. 12-13.

Moreover, Defendants claim Lissemore's "stray" remarks, *id.* at 13, are irrelevant because Plaintiff did not specifically plead that Lissemore was involved in the adverse employment actions taken by TWC against Plaintiff.  Attempting to link these supposed deficiencies to the standard articulated in *Twombly, supra,* and *Iqbal, supra,* Defendants argue that Plaintiff's claims of race, national origin, and religious discrimination should be dismissed because the adverse employment actions raise no inference of discrimination and thus are not "plausible," Def. Mem. at 13-14, citing *Sangi v. Warren Hospital,* No. 10-cv-4571, 2011 U.S. Dist. LEXIS 117463 (D.N.J., Oct. 11, 2011); *Doe v. Sizewise Rentals, LLC,* No. 09-cv-3409, 2010 U.S. Dist. LEXIS  124623 (D.N.J. Nov. 22, 2010); *Tavarez v. Twp. of Egg Harbor,* No. 09-cv-6119, 2010 U.S. Dist. LEXIS 59984 (D.N.J., June 16, 2010); *Baklayan v. Ortiz,* No. 11-cv-03943, 2012 U.S. Dist. LEXIS 48705 (D.N.J., April 5, 2012).

These cases are inapposite.  *Sangi* involved an age discrimination claim in which a complaint was dismissed as insufficient because it simply recited that plaintiff was a member of

a protected class and was subject to adverse employment action including termination.  *Sangi,* 2011 U.S. Dist. LEXIS at *7-*8.  The FAC here alleges much more: it alleges specific indicia of discrimination (e.g., the comments of Lissemore which continued despite complaints to management, FAC ¶¶ 29-30) and allegations that Plaintiff was treated dissimilarly from employees outside the protected class (FAC ¶ 53).  In *Doe,* the court rejected "generalized accusations" that defendants concealed higher paying jobs from Plaintiffs "for the sake of advancing an outsider white male with less seniority," and failed to offer Plaintiffs the same training and education opportunities that she offered other employees "of different races." *Doe,* 2010 U.S. Dist. LEXIS 124623 at *18.   Here, the FAC is much more specific about the types and varieties of adverse employment action to which the Plaintiff was subjected.

In *Tavarez,* the court rejected allegations in a discrimination complaint as conclusory because the complaint did not assert that people outside the protected class were affected. ("[T]he Complaint does not identify the race or ethnicity of the police officers who were promoted to captain ahead of Tavarez").  2010 U.S. Dist. LEXIS 59984 at *12.   This is not true in the case at bar.  Here, for example, the FAC has alleged that the Plaintiff was subjected to adverse employment action "not otherwise leveled and directed at white employees," FAC ¶ 53. In *Baklayan,* the court rejected an allegations of race discrimination because the complaint did not identify the specific defendants who committed the violation and did not allege that the defendants had a discriminatory motive or were aware of the discriminatory actions.  2012 U.S. Dist. LEXIS 48705 at *11.  Here, the FAC has identified the Defendants who committed the discriminatory acts and alleges that the discriminatory actions were the result of race discrimination.  FAC, ¶¶ 34, 54.

Defendants would hold the Plaintiff, at the very outset of the case and before any discovery has proceeded, to an unrealistic pleading standard.  It is the Defendants, and not the Plaintiff, who have access to the information and documents necessary to finally answer the question of whether the long pattern of discriminatory conduct was based on a legitimate and non-discriminatory motive.   Plaintiff has identified persons in his workplace, high up in his chain of command, who made inappropriate comments implicating his race, national origin, and religion.  Plaintiff has observed that other employees, who were not members of the protected class, are not treated the same way he is regarding fundamental aspects of the terms and conditions of his employment, are not penalized as Plaintiff is (FAC, ¶ 53).  At this early stage of the case, it would simply be unfair to require the Plaintiff to prove much more factual detail, when the answers to the questions raised by the Defendant can be answered by documents and other information that is within their control.

It is simply wrong to argue that the FAC's allegations are "wholly conclusory" so as to mandate their dismissal.  The Plaintiff has alleged sufficient factual detail to provide the Defendants with notice of his claims.  This aspect of the Motion should be denied.

## II.  THE FAC STATES A CLAIM FOR RETALIATION.

Defendants argue (Def. Mem., pp. 17-25) that Plaintiff has failed to state a claim for retaliation on the grounds that his claims are wholly conclusory, that he failed to plead a causal connection between his protected grounds and the retaliatory action, and that he was terminated for a non-discriminatory reason.   These arguments are unavailing.  The FAC alleges as follows:

¶ 16. Plaintiff was a witness in a federal lawsuit alleging discrimination by TWC.

¶ 18.  Plaintiff submitted a declaration where he stated that he had been a victim of discrimination on the basis of race and religion.

18

¶ 19.  Plaintiff testified as a witness in the federal trial.

¶ 21.  TWC retaliated against Plaintiff for testifying.

¶ 27.  After his testimony in the lawsuit, the discrimination against him intensified.

¶ 28.  Plaintiff was passed over for promotion to shift supervisor.

¶¶ 32-33.  Defendant Ciliberti wrongfully wrote Plaintiff up, suspended him without legitimate reasons and harassed him.

¶ 34.  The retaliatory action was in part because of his testimony.

¶ 37.  Instead of disciplining the employees who were found to have acted in a discriminatory manner, Defendants disciplined Plaintiff.

¶¶ 47-49.  Plaintiff was given a "Last Chance Agreement," which he refused to sign, which would have required him to withdraw his claims of discrimination, and was subsequently terminated.

¶ 83.  Plaintiff retaliated against Plaintiff for his testimony in a federal lawsuit.

Clearly, Plaintiff has stated a claim for retaliation.  His assertions are clear: he testified in a lawsuit alleging discrimination against the Defendants, and for that suffered a  host of retaliatory actions such as excessive criticism, write-ups, and other adverse employment action, and ultimately termination.  This is not in any way a case like *Holmes v. Gates,* No. 08-cv-2152, 2010 U.S. Dist. LEXIS 22884, at *9-10 (M.D. Pa. Mar. 11, 2010), *aff'd,* 403 Fed. Appx. 670 (3rd Cir. 2010), which involved bald conclusory statements.  This is a case in which the Plaintiff alleges that because of his testimony against TWC in a discrimination case, in which he testified that he experienced discrimination at TWC, he suffered retaliation in the form of very specifically alleged adverse employment action.  To urge this Court to find that these allegations are "conclusory" is simply absurd.

19

Also absurd is Defendants' contention that he did not plead causality, since the FAC repeatedly attributes the retaliation to his testimony in the Castillo Case.  FAC ¶¶ 21, 27, 34. Defendants would like this Court to transform the simple requirements of notice pleading into a requirement that Plaintiff produce his evidence of discrimination at the pleading stage.  The "plausibility" doctrine of *Twombley* and *Iqbal* are not that broad.  Here, it would be absurd to dismiss the retaliation claims before Plaintiff has had an opportunity to show "temporal proximity" or other facts sufficient to raise an inference of retaliation in the course of discovery. As Defendants admit (Def. Mem., p. 22) the FAC is specific enough to allow the Defendants to determine that the Plaintiff's termination took place eighteen months after his testimony in the Castillo Case, and five months after he filed an EEOC charge.  Defendants do not address why this is insufficient to show "temporal proximity" or why this is not enough, on its face, to draw an inference of retaliation.  Here, Plaintiff has alleged facts showing that retaliatory action took place *after* he engaged in the protected activity of testifying.

Finally, and incorrectly, the Defendants point to the "Last Chance Agreement" as evidence that Plaintiff was terminated for a legitimate, non-discriminatory reason (Def. Mem., pp. 24-25).  *Moran v. Redford Union Sch. Dist.,* No. 08-cv-15215, 2009 U.S. Dist. LEXIS 120779 (E.D. Mich. Dec. 29, 2009).  Last Chance Agreements are not presumptive evidence of a legitimate non-discriminatory motive for termination.  Here, as Plaintiff, in order to sign the Last Chance Agreement, he would have had to give up his discrimination claims (FAC, ¶ 48). Because the Last Chance Agreement would have improperly required him to give up his rights, it was, on its face, pretextual for TWC's unlawful discrimination, as Plaintiff alleged.  FAC, ¶ 50.

Because the FAC properly alleges retaliation, this aspect of Defendants' Motion should be denied.

### III.  PLAINTIFF HAS NOT WAIVED OTHER CLAIMS BY PLEADING A CEPA CLAIM.

The Defendants argue (Def. Mem., pp. 25 – 27) that Plaintiff's claims of retaliation should be dismissed at the pleading stage because Plaintiff waived these claims by asserting a retaliation claim under the CEPA based on the same grounds.  This is incorrect: as a matter of state law, a plaintiff who includes a CEPA claim among other causes of action must make an election of remedies, but there is significant state and federal decisional authority that such a plaintiff may not be required to do so until after discovery is substantially completed.  Plaintiff urges this Court to so hold here.

In *Maw v. Advanced Clinical Communications,* 359 N.J. Super. 420 (App. Div. 2003) a lower court dismissed, pursuant to CEPA's waiver provision, a common law wrongful discharge claim that was included in a complaint that also included a CEPA claim.  The court held that the election should be made at the conclusion of discovery, reasoning:

> Here, the issue is not whether plaintiff ultimately may bring both a common-law claim and a CEPA claim--plaintiff acknowledges that she must elect one or the other--but rather at what point must plaintiff make the election.
>
> Although none of the cases cited specifically address at what point the election must be made, [*Young v. Schering Corp.,* 141 N.J. 16 (1995)] is instructive.  The Court found the election needed to be made "once a CEPA claim is 'instituted.'" *Id.* at 29. However, in discussing the meaning of "institution of an action," the Court noted that "[t]he meaning of 'institution of an action' could conceivably contemplate an election of remedies with restrictions in which the election is not considered to have been made until discovery is complete or the time of a pretrial conference contemplated by Rule 4:25-1.  Another question is whether the statutory waiver is applicable  if the CEPA claim is withdrawn or otherwise concluded prior to judgment on the merits." *Id.* at 32. <u>We take this language to mean that before electing remedies, a plaintiff should have an opportunity to complete discovery. Only after gaining access to all of the facts, will a plaintiff be in a position to make a knowing and meaningful election. Here, plaintiff was not given that opportunity</u>. As such, we also reinstate plaintiff's common-law claim.

359 N.J. Super. at 441 (emphasis supplied).

The Supreme Court subsequently reversed the Appellate Division's decision in *Maw* on grounds unrelated to the issue of whether a plaintiff may plead in the alternative for relief under CEPA and the common law and elect his or her remedy later in the litigation. *Maw v. Advanced Clinical Communications,* 179 N.J. 439, 445-46 (2004).  As reasoned by this Court in *Rubin v. Sultan Healthcare,* 2009 U.S. Dist. LEXIS 41534 (D.N.J. 2009):

> From this Court's review of the Supreme Court's Maw opinion, the majority left the Appellate Division's analysis undisturbed. The Maw dissent, however, expressed its opinion that the litigated dispute - specifically, the plaintiff's discharge allegedly as a result of her refusal to enter into an employment contract containing a non-compete covenant - did carry public policy implications and thus adequately supported causes of action under CEPA and [common law wrongful discharge]. In so doing, the dissent wrote that it would affirm the Appellate Division's judgment and allow both the CEPA claims and the common-law . . . claims to go forward. Implicit in that discussion is the view that the CEPA waiver provision does not bar a Pierce claim at the pleading stage, as Defendants now urge this Court to hold.
>
> . . .
>
> Guided by the on-point analysis of the New Jersey Appellate Division in Maw, the Supreme Court's dissent in that case, and the above-quoted dicta of the Supreme Court in Young, this Court holds that Plaintiff has not waived her [common law] claim by merely filing a Complaint which pleads for relief under the alternative CEPA theory. This Court predicts that New Jersey's Supreme Court would hold that the CEPA  waiver provision would not require a plaintiff to elect her remedy at the pleading stage of the litigation but rather defer the waiver until the plaintiff has had an opportunity to conduct discovery.

*Rubin v. Sultan Healthcare,* 2009 U.S. Dist. LEXIS 41534 at *11-*12 (citations omitted). Subsequent to *Rubin,* and recently, this Court concluded in *Broad v. Home Depot, Inc.,* 2014 U.S. Dist. LEXIS 55552 (D.N.J., April 22, 2014) that "decisions issued by New Jersey courts on this issue support the view that the CEPA waiver does not attach until after the completion of discovery." *Id.* at *9.

As Defendants point out, other decisions of this Court disagree with this reasoning. (Def. Mem. pp. 26-27).  *See, e.g.,  Robles v. U.S. Envtl. Universal Servs., Inc.,* 469 Fed.Appx.

104 (3rd Cir. 2012) (an appeal of a grant of summary judgment in which the filing of CEPA

claims was held to waive related state claims); *Hornung v. Weyerhaeuser Co.,* No. 06-cv-2300,

2007 U.S. Dist. LEXIS 70080 (D.N.J. Sept. 21, 2007).  However, Plaintiff submits that this

Court should not follow these decisions.  This   question is solely an issue of New Jersey state

law.  *Robles, Hornung,* and their progeny are not based on the reasoning of New Jersey state

courts, as are  *Broad* and *Rubin* and their progeny.  The highest court in New Jersey to address

this question of New Jersey state law is the Appellate Division, which in its *Maw* decision

unequivocally held that the CEPA waiver does not apply until after the completion of discovery.

This reasoning finds support in the New Jersey Supreme Court's decision in *Young*, and the New

Jersey Supreme Court did not disagree with this reasoning in its own review of *Maw,* while its

*Maw* dissent implicitly agreed with it.

      Even if, as Plaintiff submits is unlikely, this Court holds that the election of remedies is

immediate, this Court should be careful to distinguish between "related" and "unrelated"

retaliation claims.  The CEPA waiver only applies to related claims.  As the New Jersey Supreme

Court held, "the waiver exception does not apply to those causes of action that are substantially

independent of the CEPA claim."  *Young v. Schering Corp.,* 141 N.J. 16, 26 (1995).  Here, the

Plaintiff worked in New York and New Jersey, which is why Plaintiff has asserted claims arising

under both New York and New Jersey law.  Subject to what emerges in discovery, some of

Plaintiff's retaliation claims may arise during the time he was working in New York.  CEPA

only applies to New Jersey state claims.  Accordingly, even if the CEPA waiver applies

immediately, it should not operate to invalidate all of Plaintiff's retaliation claims.   That aspect

of Defendant's Motion that urges this Court to find that Plaintiff has waived his CEPA claim

should be denied.

## IV.   IN THE ALTERNATIVE, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT.

If, as Plaintiff submits is unlikely, this Court grants the Motion and dismisses the FAC in its entirety due to a perceived pleading deficiency, Plaintiff cross-moves in the alternative for leave to amend the Complaint.  Rule 15 of the Federal Rules of Civil Procedure directs courts to freely grant leave to amend complaints "where justice so requires."

Notwithstanding this mandate, a District Court may deny a motion to amend a complaint if "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.2d 107, 116 (3rd Cir. 2003).

Here, Defendants do not contend that Plaintiff should not be permitted to amend the FAC, and do not assert the presence of any of the *Fraser* factors.  There has been no undue delay, bad faith or dilatory motives, there is no attempt to show that amendment of the FAC would be futile, and amendment would not prejudice the Defendants. On the contrary, dismissal with prejudice would work a great injustice on the Plaintiff, who has articulated significant violations of state and federal law, together with a host of specific facts.  Plaintiff has amended the Complaint once, but the litigation is still in an early stage, and there have been no delay, bad faith, or dilatory motives.  If this Court finds the FAC deficient, Plaintiff respectfully seeks leave to amend the FAC and file an amended pleading.

**CONCLUSION**

Wherefore, for the above arguments and reasons, Plaintiffs respectfully urge this Court to deny the Defendants' Motion, and grant Plaintiffs such other and further relief as this Court may deem just and proper.

Dated: June 27, 2014

Respectfully submitted,

By:     /s/ Michael G. Radigan

Michael G. Radigan
**JTB LAW GROUP LLC**
155 2nd Street, Suite 4
Jersey City, NJ 07302
(201) 630-0000 (office)
(855) 582-5297 (fax)

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, being of full age and not being a party to this action, on June 27, 2014 I electronically filed the foregoing document with the United States District Court for the District of New Jersey by using the CM/ECF system. I certify that the following counsel of record of Defendants are registered as ECF Filers and that they will be served by the CM/ECF system:

**MARJORIE B. KULAK**
KAUFF MCGUIRE & MARGOLIS LLP
950 THIRD AVENUE
14TH FLOOR
NEW YORK, NY 10022
212-644-1010
Email: kulak@kmm.com

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

\_\_/s/ Michael G. Radigan

MICHAEL G. RADIGAN